REED ET AL. v. McILROY.

ATTACHMENT:    *Property of principal for debt of agent.*

  Property purchased by an agent in his own name for an undisclosed prin-
      cipal, cannot be seized for the debt of the agent unless his creditor has
      been misled by appearances or the conduct of the parties into giving
      him credit upon a false basis.

APPEAL from *Washington* Circuit Court.
Hon. J. F. WILSON, Special Judge.

*B. R. Davidson* for appellant.

The contract as entered into amounted simply to an un-
written mortgage, which *could not* be acknowledged or
recorded, and created no lien. (*Gantt's Dig., sec. 4288.*)
Had it been in writing and recorded it would have been
void. (*41 Ark., 186; 39 Ib., 325.*)   Any arrangement made
to secure money is a mortgage. (*5 Ark., 321, 335-6; 27
Ib., 500.*)   Where one is allowed to hold himself out as
the ostensible owner of property, and thereby gain a delu-
sive credit, the property is subject to his debts. (*1 Gillman,
Ill., 188, 217-18.*)   Appellants knew nothing of the secret
arrangement, and so long as the property was in Nolen's
control they were subject to his debts.   *Waples on Attach.,
153.*

*L. Gregg* for appellee.

There is no proof that appellants knew anything of the
agreement between Nolen and McIlroy, or that they ad-
vanced money or that Nolen obtained credit by reason of
his ostensible ownership.   McIlroy was the *owner* of the
property, Nolen only receiving a commission on profitable
sales for his services.   See *40 Ark., 216.*

COCKRILL, C. J. Reed & Ferguson sued one Nolen in the Washington Circuit Court, and attached fifty odd head of hogs as his property. McIlroy interpleaded for the hogs, and, a jury being waived, the court found in his favor and gave judgment for him.

There was virtually no conflict in the testimony, and when summed up it amounts to this: Nolen was a live-stock buyer. He was insolvent and indebted to McIlroy, a banker at Fayetteville. They entered into an agreement to buy and sell stock, by which McIlroy hoped to enable Nolen to reduce his indebtedness to him. The arrangement was, that Nolen should attend to all the details of the business; he was to purchase stock, ship by rail to St. Louis, Mo., to a commission merchant selected by the parties, who was instructed, upon making sales, to place the proceeds to McIlroy's credit. McIlroy, in the meantime, was to furnish money to make the purchases, and it was distinctly understood that all stock purchased under the agreement should be his property. After a return of sales from St. Louis, Nolen was to receive a part of the profits as compensation for his services. If no profit was realized Nolen was to take nothing. If there was a loss it was to be deducted from his share of the next profits realized. In pursuance of this agreement the business was carried on for about a year before the attachment, and all the while in Nolen's name. McIlroy was not known in it—at least to the public. Nolen usually drew checks in his own favor on McIlroy's bank to pay for the stock he bought. This stock account was kept separate from his individual account in McIlroy's books, and the proceeds of sales in St. Louis, where all the sales appear to have been made, were placed to McIlroy's credit. The parties seem to have conformed to the terms of their agreement in their transactions.

The hogs in question were bought under it in the usual way.

Reed & Ferguson presented the case in the Circuit Court solely on the theory that Nolen was held out to the world as the owner of the property purchased by him, and that the agreement between him and McIlroy to the effect that it should belong to the latter was inoperative because it was secret. This is the tenor of all their prayers for declarations of law. They did not prove, however, that they were ignorant of the real state of affairs, or that they had been induced to contract with Nolen on a false basis of credit. In a proper case a creditor may subject what is only apparently the property of an agent to the payment of his debt. The plaintiff did not present such a case. There was no proof that they had been misled in any way by appearances or by the conduct of the parties. In the absence of such showing, no one is injured by the failure of an agent to disclose his principal.

We do not think the evidence sustains the appellants' present contention, that the money advanced by McIlroy was a loan to Nolen, and that the title to the property purchased vested in him. The evidence fairly points to Nolen as agent merely, receiving a share of the profits, when realized, as remuneration for his services. (See *Alexander v. Tomlinson, 40 Ark., 216.*) This is the view taken of it by the court below, and the judgment is affirmed.